Filed 9/16/20  P. v. Wooten CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B299935 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA065825) |
| v. | |
| JAMES D. WOOTEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Allen Joseph Webster, Jr., Judge.  Affirmed.

Charlotte E. Costan, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristen J. Inberg and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Defendant James D. Wooten appeals from the trial court's summary denial of his petition for resentencing under Penal Code section 1170.95.[1]  Although defendant claims he meets the prerequisites for relief under the statute because he was convicted of felony-murder, he does not – the record shows he was the actual killer.  As defendant is ineligible for resentencing as a matter of law, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.    *The Underlying Facts*[2]**

"In 1988, Dwayne Walker was shot and killed at a gas station.  He was killed with a .38 caliber bullet fired from a revolver.  Three witnesses, who were stopped at an adjacent intersection, saw the gunman rifle through Walker's pockets and search his car.  Walker had a wallet with money in it at the time of the shooting.  The gunman then left on foot, in the direction of a nearby church.  At the church, the gunman carjacked a woman who had just entered the church parking lot and drove off.  The car was later abandoned.

"Although the carjacking victim helped police prepare a composite sketch of her assailant, and the witnesses provided descriptions to police, the police were unable to identify the killer.  Fingerprints were taken from the outside of Walker's car's

---

[1]     All undesignated statutory references are to the Penal Code.

[2]     Our discussion of the underlying facts is taken from the opinion in our prior appeal.  (*People v. Wooten* (Sept. 13, 2004, B171508) [nonpub. opn.] [2004 WL 2029727].)  Although neither Wooten nor the Attorney General asks us to take judicial notice of the record in our prior appeal, they both rely on the opinion.

driver's side window, but no match was made. Walker had washed his car weekly.

"In 2002, cold case investigators resubmitted the fingerprints to the California identification databank. Defendant was identified as a possible match. A fingerprint analyst confirmed that the prints belonged to defendant. Homicide investigators compiled a photographic display with a photograph of defendant taken in 1988. The three witnesses and the carjacking victim each identified defendant's photograph with differing degrees of certainty. Defendant lived less than a mile from the location at which the carjacking victim's car had been abandoned.

"The police also attempted to determine whether a gun defendant had been known to possess could be identified as the murder weapon. In 1996, defendant had been arrested at the scene of a robbery of an auto parts store. A gun had been found and attributed to defendant. The gun was a Smith & Wesson .38 caliber revolver. In 2002, police test-fired the revolver and compared the test bullet to the bullet that killed Walker. Both bullets showed the same 'general rifling characteristics,' which could be produced by guns made by only three manufacturers. However, due to a small defect in the gun, there were insufficient individual marks to enable a further comparison. The revolver could not be identified as the gun that killed Walker; nor could it be excluded.

"Defendant offered a defense of third party culpability. When police had arrived at the gas station, they had obtained a description of the gunman and searched the neighborhood. Police found a man, Rene Johnson, who seemed to match the general description, and brought him to the scene. Johnson was shown to

3

Walker when Walker was drifting in and out of consciousness as the paramedics worked on him. Officers asked, 'Is this him?' Walker stated, 'Yes, that is him.' " (*People v. Wooten, supra,* (B171508) [2004 WL 2029727, **1-2], footnote omitted.)

## 2.    *Information, Conviction, and Appeal*

Defendant was charged by information with a single count of murder (§ 187). The special circumstance that the murder was committed while defendant was engaged in the crime of robbery was alleged (§ 190.2, fmr. subd. (a)(17)), as was a personal use of firearm enhancement (§ 12022.5, subd. (a)(1)).

Defendant represented himself at trial and was convicted as charged. He was sentenced to life imprisonment without the possibility of parole, with a consecutive two-year term for the firearm enhancement.

On direct appeal from his conviction, defendant raised four contentions. A prior panel of this division rejected the first three arguments, and partly modified the judgment (changing the special circumstance from robbery-murder to attempted robbery-murder) in response to the fourth.

## 3.    *Senate Bill No. 1437 and New Section 1170.95*

In 2018, the Legislature adopted Senate Bill No. (SB) 1437 which, among other things, amended the felony-murder rule. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*) review granted Mar. 18, 2020.) Specifically, SB 1437 amended section 189 to provide that an aider and abettor cannot be convicted of felony murder unless the defendant acted with the intent to kill or was a major participant who acted with reckless indifference to human life. SB 1437 did not alter felony murder culpability when the liability was not vicarious, and, even after amendment, retained felony-murder liability for a person who

4

"was the actual killer." (§ 189, subd. (e)(1).) SB 1437 also enacted a new statutory procedure, codified in section 1170.95, by which a defendant convicted of murder under the felony-murder rule could seek resentencing under the new, narrower, version of the law.[3]

### 4. *Defendant's Resentencing Petition*

On May 9, 2019, defendant, representing himself, filed a petition for resentencing under section 1170.95. The petition was handwritten, and asserted that defendant had been convicted of first-degree murder and could not be convicted now under the amendments enacted by SB 1437. He sought the appointment of counsel.

Defendant attached to his petition a "Declaration of Eligibility" in which he explained the reasons he believed he was entitled to relief. These reasons did not relate to the amendments enacted by SB 1437, but were instead an attempt to improperly relitigate his guilt and his appeal. Specifically, defendant argued he was eligible for relief because: (1) he was factually innocent as Johnson was the real killer and the evidence against defendant was speculative; (2) the Court of Appeal lacked statutory authority to modify his special circumstance to attempted robbery; (3) the prosecution was improperly permitted to present prejudicial evidence of other crimes; (4) the trial court should have sua sponte instructed on third-party culpability; and (5) the prosecution's failure to turn over Johnson's gunshot residue report deprived defendant of due process.

---

[3] The statute also modified the natural and probable consequences doctrine. Defendant was not convicted under that theory, so we do not discuss it further.

The trial court denied the petition without a hearing, because the record disclosed as a matter of law defendant was the actual killer and, therefore, did not fall within the scope of section 1170.95.  Defendant filed a timely notice of appeal.

## DISCUSSION

1. ### Defendant was Ineligible for Relief Under Section 1170.95 as a Matter of Law

Once a section 1170.95 petition is filed, there follows a multi-step process by which, if defendant is successful, results in resentencing.  (*Verdugo, supra,* 44 Cal.App.5th at p. 328.)  This appeal concerns only the first step, in which the trial court determines whether the petition is facially complete, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility.  (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020.)  If the court determines at this first stage the petitioner is ineligible for relief as a matter of law, the petition is denied; if not, the court proceeds to the next step.  (*Id.* at p. 1178.)  Here, defendant's petition was denied at the first stage; the court found defendant ineligible for relief as a matter of law because he was the actual killer.

The trial court's order does not specifically identify the materials on which it relied for its conclusion that defendant was the actual killer.  Defendant assumes the court relied on the prior appellate opinion – a reasonable assumption.  Where the prior appellate opinion conclusively demonstrates that the defendant was convicted on a theory which would render the defendant ineligible for relief under section 1170.95, the petition is properly denied at the eligibility stage.  (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted June 4, 2020 [defendant

6

was actual killer]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020 [defendant personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), and, as the actual killer, was ineligible for 1170.95 relief].)

On appeal, defendant argues that he established a prima facie case for relief, based on evidence and arguments that he might have been factually innocent. But defendant never argues that his conviction was based on anything other than actual-killer culpability. No facts suggest he might have been convicted as an aider and abettor.[4] The issue at trial was who was the lone killer -- defendant or Johnson. There was no suggestion that the two men had been working together and that defendant aided and abetted Johnson or anyone else. Defendant pointed to Johnson as the actual killer and claimed that he, defendant, had nothing to do with the crime. Thus, the dispute at trial was the identity of the lone gunman. The jury resolved that issue against defendant.

While SB 1437 modified the law of murder in some cases of vicarious liability, it made no modifications to the law of murder for the actual perpetrator. Section 1170.95 does not provide a basis for reconsidering the guilt of defendants indisputably convicted on the basis that they were the actual killer.

2. ***Defendant Had No Right to Counsel at the Eligibility Stage***

Defendant argues that he was statutorily and constitutionally entitled to appointed counsel on his section 1170.95 petition and the failure to appoint counsel alone requires

---

[4] In defendant's reply brief on appeal, he concedes that he was "charged as the actual perpetrator."

reversal. Defendant's petition was denied at the initial, eligibility stage, at which there is no statutory right to counsel. The language of section 1170.95 "makes plain the Legislature's intent to permit the sentencing court, before counsel must be appointed, to examine readily available portions of the record of conviction to determine whether a prima facie showing has been made that the petitioner falls within the provisions of section 1170.95 . . . ." (*Verdugo, supra*, 44 Cal.App.5th at p. 323. See also *People v. York* (2020) ___ Cal.App.5th ___ [2020 WL 5249362, * 3]; *People v. Tarkington, supra,* 49 Cal.App.5th at pp. 99-900; *People v. Torres, supra,* 46 Cal.App.5th at pp. 1177-1178; *People v. Cornelius, supra,* 44 Cal.App.5th 54, 58; *People v. Lewis* (2020) 43 Cal.App.5th 1128, pp. 1139-1140, review granted Mar. 18, 2020; but see *People v. Cooper* (2020) ___ Cal.App.5th ___ [2020 WL 5175210, *4].)

As to defendant's constitutional argument, both state and federal constitutions grant a defendant who faces incarceration the right to counsel at all critical stages of the process. (*People v. Rouse* (2016) 245 Cal.App.4th 292, 296-297.) A sentencing hearing typically constitutes a critical stage, as does a postconviction resentencing hearing, at least when the sentence is vacated and the defendant is resentenced anew on all counts. (*Id.* at pp. 297, 299.) Whether a particular posttrial hearing constitutes a critical stage turns on (1) an analysis of whether potential substantial prejudice to defendant's rights inheres in the particular confrontation proceeding; and (2) the likely ability of counsel to help avoid that prejudice. The essence of a critical stage is "the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some

significant way by the absence of counsel.  [Citation.]"  (*Id.* at p. 297.)

Under this test, the initial section 1170.95 prima facie eligibility determination conducted by the trial court does not qualify as a critical stage.  At the first stage, the court is tasked only with determining whether there is a prima facie showing that the defendant falls within the provisions of the statute as a matter of law.  The court must draw all factual inferences in the defendant's favor.  (*Verdugo, supra,* 44 Cal.App.5th at p. 329.) This prima facie review is not an adversarial proceeding.  Nor is it akin to a sentencing hearing.  The court does not rule on disputed issues of fact; it must consider the facts in defendant's favor.  (*Ibid.*)  In such a proceeding, counsel is not constitutionally required.  (See *People v. Barton* (1978) 21 Cal.3d 513, 519, fn. 3 [right to counsel attaches on defendant's collateral attack on his conviction after stating a prima facie case]; *In re Clark* (1993) 5 Cal.4th 750, 780 [same].) See also *People v. Shipman* (1965) 62 Cal.2d 226, 232–233 [counsel need not be appointed in connection with a writ of coram nobis in the absence of adequate factual allegations stating a prima facie case].)

In any event, Sixth Amendment rights do not attach to postconviction collateral remedies that are not plenary resentencing hearings but only provide for limited downward adjustments.  (*Dillon v. United States* (2010) 560 U.S. 817, 826, 828 [rejecting Sixth Amendment right to jury in limited resentencing proceeding based on downward modification of applicable sentencing guidelines].)  SB 1437 represents an act of lenity to which Sixth Amendment rights do not attach prior to the resentencing hearing itself.  (See *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157 [rejecting Sixth Amendment

right to jury in section 1170.95 proceedings]; *People v. Rouse, supra*, 245 Cal.App.4th at pp. 298-299 [no Sixth Amendment right to counsel prior to the resentencing hearing under an intervening act of lenity providing for a downward modification of sentence].)

### *DISPOSITION*

The order denying defendant's petition is affirmed.


RUBIN, P. J.

WE CONCUR:


BAKER, J.



KIM, J.